# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JAIME CASERES | * | |
| | * | |
| v. | * | Civil No. AW 12-1358 |
| | * | |
| S&R MANAGEMENT | * | |
| COMPANY, LLC | * | |

## MEMORANDUM OPINION

Presently pending is Defendant's Motion for Sanctions. ECF No. 44. The issues have been fully briefed and no hearing is necessary. For the reasons stated below, Defendant's motion will be denied.

### I. Background

The following facts are borrowed in part from the court's August 5, 2013 memorandum opinion. ECF No. 41. Defendant S&R Management Company, LLC (S&R) manages various apartment buildings in the Washington, D.C. area. Plaintiff Jaime Caseres began working for S&R as a maintenance worker around October 2006. His assigned work shift lasted from 7:00 a.m. to 3:30 p.m., Monday through Friday, with a half-hour unpaid lunch break. Plaintiff's direct supervisor was Mr. Bill Beavers. Beavers, in turn, reported to Ms. Jill Matthews, S&R's property manager. Beavers maintained the biweekly timesheets for S&R's maintenance workers, including Plaintiff, and submitted them to Matthews every two weeks.

According to Plaintiff, about three days a week, he worked at the properties until 5:00 or 5:30 p.m. However, no one at S&R ever told Plaintiff that he was required to work past 3:30 p.m., nor did Plaintiff ever directly or formally complain to Beavers or Matthews about the extra hours he allegedly worked.

Plaintiff often worked alongside Mr. German Villanueva. Plaintiff admits that Villanueva was a maintenance worker just like he was, but also claims that he was "in charge" and had a supervisory role. S&R acknowledges that prior to 2009, Villanueva would sometimes assist other maintenance workers with preparing timesheets, but this practice ceased in 2009. In 2007, Plaintiff raised the issue of overtime pay with Villanueva. Villanueva told Plaintiff that he had raised the issue with Matthews, who told Villanueva that Plaintiff would not be paid overtime. Plaintiff also alleges that on occasion Beavers worked with him past 3:30 p.m. to change water heaters at one of the properties. Plaintiff cannot recall the precise dates or the amount of overtime worked with Beavers, but believes this occurred in 2009 or 2010.

Plaintiff filed suit on May 3, 2012, alleging that Defendant failed to pay him overtime wages from 2006 through 2012 in violation of the federal Fair Labor Standards Act (FLSA), the Maryland Wage and Hour Law (MWHL), and the Maryland Wage Payment and Collection Law (MWPCL). Because of the applicable statutes of limitations, any claims accruing prior to May 3, 2009 were time barred.

## II. Standard of Review

Defendant seeks sanctions under 28 U.S.C. § 1927, which states:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

The Supreme Court has recognized that section 1927 "does not distinguish between winners and losers, or between plaintiffs and defendants." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 762 (1980). Moreover, "[t]he statute is indifferent to the equities of a dispute and to the values advanced by the substantive law." *Id.* Instead, the statute is "concerned only with limiting the

abuse of court processes." *Id.* "For this reason, a court considering the propriety of a § 1927 award must focus 'on the conduct of the litigation and not on its merits.'" *Salvin v. Am. Nat'l Ins. Co.*, 281 F. App'x 222, 225 (4th Cir. 2008) (quoting *DeBauche v. Trani*, 191 F.3d 499, 511 (4th Cir. 1999)).

In the Fourth Circuit a court must find bad faith by counsel in order to impose sanctions under section 1927. *E.E.O.C. v. Great Steaks, Inc.*, 667 F.3d 510, 522 (4th Cir. 2012). A district court may find bad faith "when the attorney's actions are so completely without merit as to require the conclusion that they must have been taken for some improper purpose such as delay." *Shank v. Eagle Techs., Inc.*, No. RWT 10-2231, 2013 U.S. Dist. LEXIS 115454, 4-6 (D. Md. Aug. 15, 2013) (citations and quotation marks omitted). "Section 1927 was intended to sanction conduct Rule 11 does not reach; i.e., protracting or multiplying the litigation to run up the opposing party's costs, remedied by awarding excess attorneys' fees and costs." *Bakker v. Grutman*, 942 F.2d 236, 242 (4th Cir. 1991). Finally, a district court may not impose a monetary sanction, including under section 1927, without considering the attorney's ability to pay. *Salvin*, 281 F. App'x at 226.

Defendant also seeks sanctions under the court's inherent powers. "The district court has the inherent authority to impose sanctions against a party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Thomas v. Ford Motor Co.*, 244 F. App'x 535, 538 (4th Cir. 2007) (quotation marks and citation omitted). Thus, under either theory, counsel must have acted in bad faith.

### III. Discussion

Defendant claims that sanctions are warranted because (1) it was clear at the end of Plaintiff's March 5, 2013 deposition that Plaintiff had no evidence to support his claim; (2)

Plaintiff unnecessarily requested an extension of the discovery deadline; and (3) Plaintiff refused to tailor his claim to the applicable limitations period. ECF No. 44-1 at 9-11.

The FLSA requires employers to pay overtime at a rate not less than one and one-half times the regular rate if the employee works in excess of 40 hours in a workweek. 29 U.S.C. § 207(a)(2). "In order to be liable for overtime wages under the FLSA, an employer must have 'knowledge, either actual or constructive, of [that] overtime work.'" *Bailey v. County of Georgetown*, 94 F.3d 152, 157 (4th Cir. 1996) (quoting *Davis v. Food Lion*, 792 F.2d 1274, 1276 (4th Cir. 1986)). Thus, to pursue this claim in good faith, Plaintiff's counsel needed evidence that a supervisory agent at S&R had constructive knowledge of Plaintiff's overtime work after May 3, 2009. Again, Plaintiff's assigned work hours were Monday through Friday, 7:00 a.m. to 3:30 p.m., but according to Plaintiff, about three days a week, he stayed at the properties and worked until 5:00 or 5:30 p.m. ECF No. 46-1 at 16; Caseres Dep. 89:12-15, March 5, 2013. At Plaintiff's deposition, he gave the following testimony in response to defense counsel's questions:

> Q: Did you tell any supervisors you were [working late]?
> A: One time I tried to charge for it, and I was told that I was not going to get paid.
> Q: How did you try to charge for it?
> A: Jill [Matthews].
> Q: You told Jill?
> A: Yes.
> Q: What did you say to her?
> A: She told me that they would not pay over 40 hours.
> Q: Well, what did you say to Jill? How did you raise the issue to Jill in the first place?
> A: I said, "One day I stayed overtime, and I want you to pay me." I told German [Villanueva], "Charge it because I stayed working late." And he said that he mentioned it, and he was told that they were not going to pay me more.
> Q: So you told German to tell Jill to ask for more money for the hours worked?
> A: Yes.
> Q: So you didn't ask Jill directly?
> A: No.
> Q: Did you tell any supervisor that you were working longer hours each day?
> A: No.

4

Caseres Dep. 91:13-92:16.

> Q. Was German somebody that you considered to be a supervisor?
> A. Yes.
> Q. -- of you?
> A. Bill [Beavers] was the supervisor.
> Q. Was German a supervisor as well?
> A. He was a worker just like I was.
> Q. Was he like a lead worker or a foreman, if you know?
> A. Yeah. He was like in charge, yes.
> Q. German was?
> A. Yes.[1]

*Id*. at 82:11-22.

> Q. Do you know of any supervisor that saw you working past 3:30?
> [Objection]
> A. Well the person that was above me was German.
> Q. Other than German, any other supervisor?
> A. No. Just Bill.
> Q. Did Bill see you work past 3:30?
> A. Sometimes I stayed with him helping him.
> Q. Past 3:30?
> A. Yes.

*Id.* at 103:22; 104:1-9.

Thus, Plaintiff had the following evidence supporting his claim that S&R had constructive knowledge of Plaintiff's overtime work: (1) the occasion when German asked Jill if Plaintiff could receive overtime pay in 2007; (2) the occasions when Bill worked past 3:30 p.m. with Plaintiff in either 2009 or 2010; and (3) the possibility that German qualified as a supervisor for purposes of placing S&R on notice of Plaintiff's overtime work. This evidence, as pointed out by the district court, is partially hearsay and is otherwise not sufficient to raise a genuine issue of material fact for summary judgment purposes. *See* ECF No. 41 at 8. However, the evidence is not *so weak* so as to justify a finding of bad faith on behalf of Plaintiff's counsel for

---

[1] In addition, Defendant's corporate representative, Ms. Rebecca Moreno-Meoni, testified that there was a time when German maintained Plaintiff's time sheets. ECF No. 46-2 at 10; Moreno-Meoni Dep. 28:16-21, March 27, 2013.

pursing the claim.  It was at least plausible that Defendant had notice of Plaintiff's alleged overtime work.  As stated *supra*, to engage in bad faith conduct, counsel's actions must not be "so completely without merit as to require the conclusion that they must have been taken for some improper purpose such as delay." *Shank*, 2013 U.S. Dist. LEXIS 115454 at 4-6 (citations and quotation marks omitted).  That level of conduct is not present here.

Defendant also argues that Plaintiff's counsel multiplied the proceedings by requesting an extension of the discovery deadline and failing to use the extension as contemplated.  ECF No. 44-1 at 10.  Plaintiff moved on February 20, 2013 to extend the discovery deadline for 30 days from March 11, 2013 to April 10, 2013, because the deposition of S&R's corporate representative was postponed to March 27, 2013.  According to Plaintiff's counsel, he did not want to preclude the possibility of conducting follow up discovery related to the deposition.  ECF No. 46 at 14.

The court concludes that counsel's request for a 30 day extension, even when coupled with his eventual failure to use the extension to conduct follow up discovery, does not amount to bad faith or intentional delay.  This is not a case in which counsel requested multiple extensions to intentionally protract the litigation or run up the costs of Defendant; Plaintiff requested one extension because he thought he might need more discovery after the deposition of S&R's representative.  That this additional discovery did not take place does not make counsel's conduct improper.  *See Riddle v. Egensperger*, 266 F.3d 542, 556 (6th Cir. 2001) ("The record does not show that Plaintiffs' counsel failed to comply with discovery or any other pretrial orders nor did Defendants file any motions to compel discovery from Plaintiffs.  Other than Defendants' motions for attorney fees and costs, there is nothing on the record to show that Plaintiffs' counsel was engaged in unreasonable and vexatious behavior.  The District Court

abused its discretion in awarding attorney fees under 28 U.S.C. § 1927."). And it did not increase Defendant's costs.

Lastly, Defendant argues that Plaintiff's counsel multiplied the proceedings by refusing to concede prior to his summary judgment opposition that his claim for damages was limited by the three year statute of limitations. Defendant asserts that this conduct "left S&R in the position of defending against all of Plaintiff's claims, as originally set forth in his Complaint." ECF No. 47 at 7. While the court agrees that Plaintiff's counsel should have narrowed the scope of his damages claim earlier in the proceedings, Defendant has failed to explain how this conduct unreasonably multiplied proceedings. Many of the facts alleged in the complaint which preceded May 3, 2009 would still be relevant to whether S&R knew about Plaintiff's overtime work generally. Moreover, Defendant has failed to offer anything specific, in the form of extra work or otherwise, to support its claim that it was prejudiced by Plaintiff's conduct. It is true that Defendant was forced to include the statute of limitations argument in its motion for summary judgment, but this argument was not complex and thus did not significantly increase Defendant's costs, if at all.

Both parties argue that *Salvin v. Am. Nat'l Ins. Co.*, 281 F. App'x 222 (4th Cir. 2008) justifies a ruling in their favor. Salvin sued her former employer for, *inter alia*, breach of contract. *Id.* at 224. The district court dismissed all of Salvin's claims except for a specific aspect of her breach of contract claim alleging that her employer altered her sales records, thus decreasing the amount of post-termination compensation owed to her. *Id.* However, at Salvin's deposition, she "testified that she believed she was receiving the amount of post-termination commissions she was entitled to under the written agreement, and she presented no evidence that the company had altered any of her sales records." *Id.* Thus, Salvin's deposition made clear that

her remaining breach of contract claim lacked merit. *Id.* Shortly after the deposition, the employer requested that Salvin dismiss the remaining claim, but her attorney refused. *Id.* The employer filed a motion for summary judgment and Salvin's attorney filed an opposition relying on an alternative theory, using factual allegations not included in the complaint. *Id.* In addition, the opposition included a new affidavit from Salvin containing statements contradicting her deposition testimony. *Id.*

The district court granted summary judgment in favor of the employer and, at the employer's request, awarded fees pursuant to 28 U.S.C. § 1927, reasoning that it was undisputed that no basis existed for proceeding after plaintiff's deposition. *Id.* at 224-25. The Fourth Circuit affirmed, concluding that Salvin's attorney acted in bad faith by (1) pursing the claim after it became clear that it was meritless, (2) submitting a summary judgment opposition based on new factual allegations, while ignoring the sole theory approved by the court's partial dismissal order, and (3) submitting a new affidavit that contradicted earlier deposition testimony. *Id.* at 225-26.

Counsel's conduct in *Salvin* was markedly worse than counsel's conduct in this case. Salvin admitted in her deposition that she had received the proper amount of post-termination commissions and that the company had not altered her sales records, facts which irrefutably extinguished her breach of contract claim. Here, the evidence was not so clear. Moreover, Salvin's counsel blatantly ignored the court's order of dismissal by advancing an alternative theory based on facts not alleged in the complaint. Such conduct clearly shows bad faith, and does not exist in this case.

## IV. Conclusion

Plaintiff's counsel's actions, when considered independently or *in toto*, do not amount to bad faith. Accordingly, Defendant's Motion for Sanctions will be denied.

Date: October 24, 2013                                              /s/
                                                              JILLYN K. SCHULZE
                                                         United States Magistrate Judge